IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | | |
|---|---|---|
| Robert Steve Jolly, | ) | C/A No.: 1:10-874-TLW-SVH |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | REPORT AND RECOMMENDATION |
| Phillip Thompson, Tom Fox, Joey Johnson, Capt. Stafford, Cpl. Jones, and Officer Updegraff, | ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Plaintiff, proceeding *pro se*, has brought this action pursuant to 42 U.S.C. § 1983, alleging violations of his constitutional rights while he was a pretrial detainee at J. Reuben Long Detention Center ("JRLDC"). Pursuant to the provisions of 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.), the undersigned is authorized to review such complaints for relief and submit findings and recommendations to the district judge. Because the motion for summary judgment is dispositive, this Report and Recommendation is entered for review by the district judge.

I.      Factual and Procedural Background

Plaintiff filed his complaint on April 9, 2010, alleging that (1) Defendants denied him the right to file legal papers, including the right to file appeals in over 50 cases; (2) his due process rights have been denied because he has not had access to a law library while at JRLDC; (3) Defendants illegally refuse to copy, notarize, or help him file legal papers; and (4) he is being held illegally and that his sentence has expired. Compl. [Entry #1].

Defendants filed their motion for summary judgment on October 22, 2010. [Entry #40]. Pursuant to *Roseboro v. Garrison*, 528 F.2d 309 (4th Cir. 1975), Plaintiff was advised of the summary judgment and dismissal procedures and the possible consequences if he failed to respond adequately to Defendants' motions. [Entry #42]. Plaintiff filed a timely response on November 15, 2010. [Entry #46]. Having carefully considered the parties' submissions and the applicable law, the undersigned recommends that Defendants' motion for summary judgment be granted.

II.     Discussion

    A.     Standard of Review

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Cruz v. Beto*, 405 U.S. 319 (1972); *see also Haines v. Kerner*, 404 U.S. 519 (1972). In considering a motion for summary judgment, the court's function is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim. *Weller v. Department of Social Services*, 901 F.2d 387 (4th Cir. 1990). Nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c). The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with "specific facts showing that there is a genuine issue for trial." *Id.* The

opposing party may not rest on the mere assertions contained in the pleadings. Fed. R. Civ. P. 56(e); *see also Celotex v. Catrett*, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case on which that party will bear the burden of proof at trial. *See* Fed. R. Civ. P. 56(c). Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."

    B.    Analysis

        1.    Rights of Pretrial Detainee

Plaintiff's claims are analyzed through the lens of the Due Process clause of the Fourteenth Amendment. "[A] pretrial detainee, not yet found guilty of any crime, may not be subjected to punishment of any description." *Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir. 1992). "However, not every hardship encountered during pretrial detention amounts to 'punishment' in the constitutional sense." *Hill v. Nicodemus,* 979 F.2d at 991. "And the fact that such detention interferes with the detainee's understandable desire to live as comfortably as possible and with as little restraint as possible during confinement does not convert the conditions or restrictions of detention into 'punishment.'" *Bell v. Wolfish*, 441 U.S. 520, 537 (1979). "A court must decide whether the disability is imposed for the purpose of punishment or whether it is but an incident of some other

legitimate governmental purpose." *Id.* at 538. In doing so, the *Bell* court noted that "maintaining institutional security and preserving internal order and discipline are essential goals that may require limitation or retraction of the retained constitutional rights of both convicted prisoners and pretrial detainees." *Id.* at 546.

However, "pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mount Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Massachusetts Gen. Hosp.*, 463 U.S. 239, 243–44 (1983) and *Hill v. Nicodemus*, 979 F.2d at 991-92). Therefore, the standards applied in Eighth Amendment conditions of confinement cases are essentially the same as those in cases arising under the Fourteenth Amendment for pretrial detainees. *See Hill v. Nicodemus*, 979 F.2d 987, 991 (4th Cir.1992); *Martin v. Gentile*, 849 F.2d 863, 871 (4th Cir.1988) (citing *Estelle v. Gamble*, 429 U.S. 97 (1976)).

      2.      Denial of Access to the Courts

Plaintiff alleges denial of access to the courts, based on having been provided allegedly insufficient postage and envelopes, lack of a law library, and Defendants' alleged failure to notarize and assist with legal documents. Specifically, Plaintiff claims that the claimed deprivations have prevented him from filing over 50 appeals in civil cases and unspecified legal papers in six criminal matters.

In order to state a claim of denial of access to the courts, a plaintiff must allege that he had been prejudiced in pursuing non-frivolous litigation concerning his conviction

or prison conditions. *Lewis v. Casey*, 518 U.S. 343, 350–53 (1996). The right of access to the courts is the "right to bring to court a grievance that the inmate wished to present," and violations of that right occur only when an inmate is "hindered [in] his efforts to pursue a legal claim." *Id.* at 343. In order to make out a prima facie case of denial of access to the courts, the inmate cannot rely on conclusory allegations; he must identify with specificity an actual injury resulting from official conduct. *Cochran v. Morris*, 73 F.3d 1310, 1316 (4th Cir. 1996); *see also White v. White*, 886 F.2d 721, 723–24 (4th Cir. 1989). A plaintiff must demonstrate that the defendants caused actual injury, such as the late filing of a court document or the dismissal of an otherwise meritorious claim. *Lewis*, 518 U.S. at 353–54. The actual injury requirement is not satisfied by just any type of frustrated legal claim. Actual injury requires that the inmate demonstrate that his "nonfrivolous" post-conviction or civil rights legal claim has been "frustrated" or "impeded." *Lewis*, 518 U.S. at 353–55.

Here, Plaintiff has stated only that he was not able to file appeals on the contempt charges in his civil cases. He provides no details of the issues he wished to appeal, nor does he give any detail in his complaint regarding how his access to the courts was denied. In his response to Defendants' motion for summary judgment, Plaintiff only alleges that he was not provided large envelopes for legal mail, and that the standard envelopes only contained sufficient postage for five pages. [Entry #46 at 3]. Prison administrators must provide inmates with adequate access to the courts, including sufficient postage for indigent inmates. *See generally, Bounds v. Smith*, 430 U.S. 817

5

(1977). However, "[i]t is well settled that '[p]risoners do not have an unlimited right to free postage in connection with the right of access to the courts. Reasonable regulations are necessary to balance the rights of prisoners with budgetary considerations.'" *White v. White*, 886 F.2d 721, 723 (4th Cir. 1989) (citing *Twyman v. Crisp*, 584 F.2d 352, 359 (10th Cir. 1978)). Here, Plaintiff admits that he received standard envelopes with postage and provides no facts indicating why his legal filings necessitated larger than standard envelopes. Additionally, Plaintiff has not provided sufficient evidence of any harm from the alleged mailing deficiencies. Therefore, Plaintiff has failed to show that he was denied access to the courts based on access to the mail.

Plaintiff also alleges he has been denied access to the courts based on the lack of a law library at JRLDC. The Fourth Circuit has ruled that the United States Constitution does not require every local jail to have a law library. *Magee v. Waters*, 810 F.2d 451, 452 (4th Cir. 1987); *Barr v. Williamsburg County*, 2007 WL 666793, at *3 (D.S.C. 2007) (holding "county jails and county detention centers are not required to have law libraries."). "[T]he brevity of confinement does not permit sufficient time for prisoners to petition the courts." *Magee*, 810 F.2d at 452. In this case, Plaintiff alleges that he was denied access to a law library, but fails to provide any specific facts as to how a pending legal case, or any other legal matter, has been adversely affected by his denial of access to legal materials. Therefore, Plaintiff has failed to state a cognizable claim for denial of access to the courts.

Additionally, Plaintiff alleges that Defendants' failure to assist him in filing legal claims and to notarize his legal documents violated his constitutional rights. However, evidence set forth by both Plaintiff and Defendants demonstrates that Defendants informed Plaintiff that "[i]f there is any document that by law requires notarization and doesn't apply to your current criminal cases or contempt issues [Defendant Johnson] will be glad to discuss those and comply with those requirements." [Entry #40-3; Entry #46-2]. Plaintiff has not indicated a specific instance in which a court ruled against him due to a failure to have a document notarized.[1]   Therefore, Plaintiff has failed to set forth evidence that he was denied access to the courts, and the undersigned recommends Defendants be granted summary judgment.

3.     Plaintiff's Detainment

To the extent Plaintiff is attacking the constitutionality of his confinement, he cannot proceed pursuant to § 1983.  Habeas corpus is the exclusive remedy for a prisoner who challenges the fact or duration of his confinement and seeks immediate or speedier release. *See Preiser v. Rodriguez*, 411 U.S. 475, 500 (1973). Although monetary relief for unlawful detainment is actionable under § 1983, such relief is not available to a plaintiff until and unless the conviction has been invalidated. *Heck v. Humphrey*, 512 U.S. 477

---

[1] Plaintiff claims he was denied notarization in his 65 civil cases.  It appears from the pleadings that Plaintiff was sentenced to six months' criminal contempt, apparently stemming from activity in the cases to which Plaintiff refers.  During his incarceration, Plaintiff was charged with additional criminal contempt charges after he had the JRLDC staff notarize "some type of property documents." [Entry #46-2].  It is only after the additional contempt charge that JRLDC began refusing Plaintiff's requests to notarize documents.

(1997). As Plaintiff has not demonstrated that his conviction or order of confinement has been invalidated, he has not set forth a claim cognizable under § 1983, and the undersigned recommends Defendants be granted summary judgment.

    4.    Qualified Immunity

Defendants also assert that they are entitled to qualified immunity in their individual capacities. The Supreme Court in *Harlow v. Fitzgerald*, 457 U.S. 800, 102 (1982), established the standard which the court is to follow in determining whether the defendant is protected by this immunity. That decision held that government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. *Harlow*, 457 U.S. at 818.

In addressing qualified immunity, the United States Supreme Court has held that "a court must first determine whether the plaintiff has alleged the deprivation of an actual constitutional right at all and, if so, proceed to determine whether that right was clearly established at the time of the alleged violation." *Wilson v. Layne*, 526 U.S. 603, 609 (1999); *see also Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 685 (4th Cir. 2000). Further, the Supreme Court held that "[d]eciding the constitutional question before addressing the qualified immunity question also promotes clarity in the legal standards for official conduct, to the benefit of both the officers and the general public." *Wilson*, 526 U.S. at 609. If the court first determines that no right has been violated, the inquiry ends there "because government officials cannot have known of a right that does not exist."

*Porterfield v. Lott*, 156 F.3d 563, 567 (4th Cir. 1998). As discussed above, Plaintiff has failed to present sufficient evidence to support his constitutional violation allegations. Nevertheless, *assuming arguendo* that Plaintiff has presented sufficient evidence of a constitutional violation, Defendants are entitled to qualified immunity from suit.

In *Maciariello v. Sumner*, 973 F.2d 295 (4th Cir. 1992), the Fourth Circuit further explained the theory of qualified immunity:

> Governmental officials performing discretionary functions are shielded from liability for money damages so long as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known. Moreover, there are two levels at which the immunity shield operates. First, the particular right must be clearly established in the law. Second, the manner in which this right applies to the actions of the official must also be apparent. Officials are not liable for bad guesses in gray areas; they are liable for transgressing bright lines.

*Maciariello*, 973 F.2d at 298.

In the instant case, Plaintiff has failed to establish any theory of liability upon the part of Defendants, and, furthermore, Plaintiff has failed to establish the existence of any constitutional deprivation. However, if the court were to find that Plaintiff has established some theory of liability upon the part of Defendants, and therefore, the existence of a constitutional deprivation, Defendants are still entitled to qualified immunity. The record before the court shows that as to Plaintiff and the specific events at issue, these Defendants performed the discretionary functions of their respective official duties in an objectively reasonable fashion. They did not transgress any statutory or constitutional rights of Plaintiff that they were aware of in the discretionary exercise of their respective

9

professional judgments. Thus, to the extent the district judge finds that a constitutional violation occurred, these Defendants are entitled to qualified immunity.

III.    Conclusion

For the reasons discussed above, it is recommended that Defendants' Motion for Summary Judgment [Entry #40] be granted and this case be dismissed in its entirety.

IT IS SO RECOMMENDED.

*[signature: Shiva V. Hodges]*

June 29, 2011                                              Shiva V. Hodges
Florence, South Carolina                          United States Magistrate Judge

**The parties are directed to note the important information in the attached
"Notice of Right to File Objections to Report and Recommendation."**